IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

JO ANN WOODBURY,               )   CIVIL ACTION NO. 9:15-2635-DCN-BM
                                  )
                                  )
             Plaintiff,    )
                                  )
v.                           )   **REPORT AND RECOMMENDATION**
                                  )
CAROLYN W. COLVIN,        )
Acting Commissioner of Social Security,   )
                                  )
            Defendant.    )
_____)

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein she was denied disability benefits. This case was referred to the undersigned for a report and recommendation pursuant to Local Civil Rule 73.02(B)(2)(a)(D.S.C.).

Plaintiff applied for Disability Insurance Benefits (DIB) on January 5, 2012, alleging disability beginning December 1, 2011, due to hypertension, depression, fibromyalgia, diabetes, insomnia, and knee arthritis. (R.pp. 91, 175-183). Plaintiff's claims were denied both initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on December 17, 2013. (R.pp. 27-53). The ALJ thereafter denied Plaintiff's claim in a decision issued March 7, 2014. (R.pp. 12-23). The Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 1-6).



Plaintiff then filed this action in this United States District Court, asserting that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for further consideration, or for an outright award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that Plaintiff was properly found not to be disabled.

### Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)); see also Hepp v. Astrue, 511 F.3d 798, 806 (8th Cir. 2008)[Noting that the substantial evidence standard is even "less demanding than the preponderance of the evidence standard"].

The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a *de novo* judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court

2



disagree with such decision as long as it is supported by 'substantial evidence.'" Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

### Discussion

A review of the record shows that Plaintiff, who was fifty four (54) years old when she alleges she became disabled, has a high school education with two years of college and past relevant work experience as a customer service representative and insurance agent. (R.pp. 18, 31, 33-34, 50, 212, 222, 247). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that she has an impairment or combination of impairments which prevent her from engaging in all substantial gainful activity for which she is qualified by her age, education, experience, and functional capacity, and which has lasted or could reasonably be expected to last for a continuous period of not less than twelve (12) months. After a review of the evidence and testimony in the case, the ALJ determined that, although Plaintiff does suffer from the "severe" impairments[1] of osteoarthritis, fibromyalgia, diabetes mellitus, hypertension, and obesity, she nevertheless retained the residual functional capacity (RFC) to perform a reduced range of medium work.[2] (R.pp. 14, 18). The ALJ further determined that Plaintiff was capable of performing her past relevant work as a customer service representative and insurance agent with this RFC, and was therefore not entitled to disability benefits. (R.p. 22).

---

[1]An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1521(a); Bowen v. Yuckert, 482 U.S. 137, 140–142 (1987).

[2]Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).



Plaintiff asserts that in reaching this decision, the ALJ erred by improperly considering and evaluating the opinion of examining physician Dr. James Way, by failing to properly consider and discuss Plaintiff's consistently low GAF scores,[3] and by failing to properly follow and comply with SSR 12-2p in evaluating Plaintiff's fibromyalgia.  However, after a careful review and consideration of the evidence and arguments presented, the undersigned finds and concludes for the reasons set forth hereinbelow that there is substantial evidence to support the decision of the Commissioner, and that the decision should therefore be affirmed.  Laws, 368 F.2d at 642 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"].

## 1.

### (Opinion of Examining Physician Dr. James Way)

Plaintiff's initial argument is that the ALJ committed reversible error by improperly considering and evaluating the findings and opinion of Dr. Way, one of Plaintiff's examining physicians.  Plaintiff contends that the findings and opinions of Dr. Way contain work-preclusive limitations which the ALJ improperly ignored.

Dr. Way, a licensed clinical psychologist, performed a mental status evaluation of the Plaintiff on May 9, 2012, a little over five months after Plaintiff alleges she became disabled and unable to perform any work activity.  Plaintiff advised Dr. Way that she resided with her husband of thirty-five (35) years, and had last worked in February 2010.  She reported that her job "ended at that time", and that she had "been unable to find employment since that time".  Plaintiff also told Dr. Ray

---

[3]"Clinicians use a GAF [Global Assessment of Functioning] to rate the psychological, social, and occupational functioning of a patient." Morgan v. Commissioner of Soc. Sec. Admin., 169 F.3d 595, 597 n.1 (9th Cir. 1999).



that due to "depression, decreased concentration, and decreased energy level" she would be "unable to work on some days".  Dr. Way observed that Plaintiff was "noted to have fibromyalgia, diabetes, hypertension, arthritis, and insomnia", and had also undergone right knee surgery.  She was taking several medications.

Plaintiff told Dr. Way that she had experienced recurrent depression since her thirties with "various life events" triggering depression over time.  However, Plaintiff reported only sporadic treatment for mental health issues.  (R.pp. 347-348).  Plaintiff reported that in general she had decreased concentration and a decreased energy level, described a fairly lethargic lifestyle, and advised Dr. Way that she "avoids many activities secondary to depression".  Even so, Plaintiff reported that she did perform some cooking, cleaning, laundry, and shopping tasks, that she attends church on a weekly basis, that she has a drivers license and continues to drive, and that she was capable of directing funds management.  Further, even though Plaintiff told Dr. Way that she experienced a depressed mood and sadness on a daily basis, she acknowledged that she was not receiving treatment from any psychiatric professionals for this complaint.  (R.p. 348).

Dr. Way observed that Plaintiff ambulated independently and without apparent significant difficulty; that she was adequately groomed and casually and appropriately attired; that although she exhibited a decreased energy level she was alert, responsive and cooperative; and that while the tone of her speech reflected mild depression and an overall subdued presentation, her speech was normal and without any articulation difficulties.  Plaintiff had a generally restricted affect, and although she exhibited a depressed mood, she was in no acute distress, she was not tearful and did not appear anxious, and her thought processes were logical with no evidence of thought



disturbance. Plaintiff's cognitive speed was observed to be normal, and her persistence and concentration were also noted to be adequate. (R.pp. 348-349).

Dr. Way performed a Mini-Mental State Examination,[4] on which Plaintiff obtained a total score of 29 out of a maximum 30 points. Dr. Way opined that this score fell within the range of normal cognitive functioning. Dr. Way opined that while Plaintiff had a history of recurrent depression, she possessed adequate intellectual skills to perform basic self-care tasks and other instrumental activities of daily living, and was also capable of learning a variety of occupational tasks. Since Plaintiff was currently experiencing difficulty with concentrating and initiating tasks secondary to her depression, Dr. Way opined that those factors might well create inconsistent functioning with instrumental activities of daily living and with occupational tasks, and he believed Plaintiff would benefit from comprehensive psychiatric treatment, as she was not receiving treatment from any psychiatric professionals at that time. Dr. Way also opined that Plaintiff was able to understand and follow the flow of conversation, follow simple instructions, avoid common physical dangers, was capable of directing funds management and of performing the mechanics of typical business affairs, and that she possessed adequate cognitive skills to make appropriate adjustments and decisions in an occupational setting. He further believed that, although Plaintiff's social functioning was limited "at the current time", she appeared to possess adequate social interaction skills. Dr. Way diagnosed Plaintiff with moderate depression, recurrent, while also noting her history of fibromyalgia, diabetes, hypertension, arthritis, and insomnia (per patient report). (R.pp. 349-350).

_____

[4]A widely used written assessment instrument that measures and evaluates cognitive function and mental impairment. Often given serially to gauge the effect of time on a patient's condition. http://medical-dictionary.thefreedictionary.com/Mini-Mental+State+Examination, Mar. 2012.



After considering and evaluating the record and evidence in this case, the ALJ found that Plaintiff's complaint of depression and anxiety was not a severe impairment, concluding that, whether considered singly or in combination with Plaintiff's other medical complaints, Plaintiff's mental impairment did not cause more than a minimal limitation in her ability to perform basic work activities. (R.p. 15). In reaching this determination, the ALJ specifically considered and evaluated the findings from Dr. Way's Mental Status Examination of May 2012 (along with the other evidence relating to Plaintiff's alleged depression), even giving Dr. Way's opinion "significant weight". (R.pp. 15-16, 21). Plaintiff argues, however, that in doing so, the ALJ "misstated portions of Dr. Way's opinion when he stated that Dr. Way's Mini-Mental Status Examination was evidence that [Plaintiff] had no psychological impairment". Plaintiff's Brief, p. 16. Plaintiff specifically argues that the ALJ improperly construed the results of Dr. Way's Mini-Mental Status Examination as being "suggestive of normal psychological functioning". (R.p. 15). Plaintiff argues that the Mini-Mental Status Examination only tests cognitive ability, not emotional problems, and that the ALJ's finding was therefore error because "Dr. Way never said or intended to suggest that these test results were any evidence that [Plaintiff] had no psychological impairment", and in fact actually found that Plaintiff had significant emotional impairments. Plaintiff's Brief, p. 17.

This argument is without merit. When discussing Dr. Way's findings and opinion, the ALJ correctly noted that Plaintiff "obtained 29/30 on a Mini-Mental Status Examination, suggestive of normal psychological functioning", and that although Dr. Way had assessed her with "recurrent moderate depression", that Dr. Way "indicated that the [Plaintiff] was able to follow simple instructions, possessed adequate cognitive skills to make appropriate adjustments and decision[s] in an occupational setting as well as adequate social interaction skills". (R.p. 15). There



is no incorrect statement by the ALJ of any factual findings of Dr. Way in this narrative from his decision. In giving "significant weight" to Dr. Way's findings and opinion, the ALJ further correctly noted that Dr. Way had concluded that Plaintiff was capable of engaging in work-related tasks, and had adequate social interaction skills, concentration, and memory. (R.p. 21). See (R.pp. 348-350). Again, the undersigned can discern no reversible error in the ALJ's evaluation and consideration of this evidence. See Foster v. Bowen, 853 F.2d 483, 489 (6th Cir. 1988) [A mental impairment diagnosis is insufficient, standing alone, to establish entitlement to benefits.]. Plaintiff's complaint that the ALJ did not specifically discuss every single finding in Dr. Way's opinion does not justify a reversal in this case, as it is readily apparent from a plain reading of the decision that the ALJ adequately reviewed and discussed Dr. Way's evaluation and the conclusions the ALJ derived therefrom. Dryer v. Barnhart, 395 F.3d 1206, 1211( 11th Cir. 2005) [ALJ not required to specifically refer to every piece of evidence in the decision].

        Additionally, and as further support for his conclusion, the ALJ also noted that Dr. Way's findings were supported by and consistent with the essentially normal mental status examinations documented by Plaintiff's primary care providers, as well as other medical opinions from examining physicians and/or state agency physicians, who also concluded that Plaintiff did not have any significant work related mental limitation. (R.pp. 15, 21); see generally (R.pp. 109-110, 321, 361-365, 410-413, 415). See Richardson v Perales, 402, U.S. 389, 408 (1971)[assessment of examining physicians may constitute substantial evidence in support of a finding of non-disability]; Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986) [Opinion of non-examining physicians can constitute substantial evidence to support the decision of the Commissioner]; see also Johnson v. Barnhart, 434 F.3d 650, 655-656 (4th Cir. 2005) [ALJ can give significant weight to opinion of



medical expert who has thoroughly reviewed the record]. Indeed, Plaintiff even herself told one of her medical examiners, Dr. Jomar Roberts, on May 12, 2012 (4 ½ months *after* Plaintiff's alleged disability onset date), as follows: "When asked about her depression affecting her ability to function normally she states her symptoms do not prevent normal function in her daily activities". (R.p. 318).

While Plaintiff is correct that her medical records contain consistent complaints by her of depression and anxiety and confirm that she has been diagnosed with depression that was even designated as "severe" by some providers, see (R.pp. 15, 21, 438, 442); that does not mean that this condition constitutes a severe impairment, or that it entitles her to an award of disability benefits. See Trenary v. Bowen, 898 F.2d 1361, 1364 (8th Cir. 1990) [Courts should properly focus not on a claimant's diagnosis, but on the claimant's actual functional limitations]. Rather, it is the job of the ALJ to consider and evaluate such conflicting evidence and reach a decision as to a Plaintiff's limitations based on that evidence, and as long as there is substantial evidence in the record to support the decision of the ALJ, this Court cannot reverse that decision, even if it disagrees with the decision. Kellough v. Heckler, 785 F.2d 1147, 1149 (4th Cir. 1986) ["If the [Commissioner's] dispositive factual findings are supported by substantial evidence, they must be affirmed, even in cases where contrary findings of an ALJ might also be so supported."] (citation omitted)]; Hays, 907 F.2d at 1456 [It is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]; Poling v. Halter, No. 00-40, 2001 WL 34630642, at * 7 (N.D.W.Va. Mar. 29, 2001)["It is the duty of the ALJ, rather than the reviewing court, to assess the evidence of record and draw inferences therefrom"]; see also Laws, 368 F.2d 640 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"].



Here, there is substantial evidence in the case record, including Dr. Way's evaluation, to support the ALJ's decision that Plaintiff's mental impairment resulted in no more than a minimal limitation in her ability to perform basic work activities. See (R.pp. 109-110, 318, 321, 348-350, 361-365, 410-413, 415). As such, the undersigned can find no reversible error in the ALJ's evaluation of Dr. Way's findings and opinion in this case, and this claim is therefore without merit. Guthrie v. Astrue, No. 10-858, 2011 WL 7583572, at * 3 (S.D.Ohio Nov. 15, 2011), adopted by, 2012 WL 9991555 (S.D.Ohio Mar. 22, 2012)[Even where substantial evidence may exist to support a contrary conclusion, "[s]o long as substantial evidence exists to support the Commissioner's decision . . . this Court must affirm."]; Smith v. Chater, 99 F.3d at 638 ["The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court"].

## II.

### (Consideration of Plaintiff's GAF Scores)

Plaintiff's claim concerning her GAF scores is based on the fact that she was assessed with GAF scores in the 40's on several occasions in June through September 2013. See generally, (R.pp. 432, 435, 438, 442); see Plaintiff's Brief, p. 22. A GAF of between 41 and 50 indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment and social, occupational, or school functioning (e.g. no friends, unable to keep a job)". Boyd v. Apfel, 239 F.3d 698, 702 (5th Cir. 2001). Plaintiff's complaint is that the ALJ does not mention these GAF scores in his decision.

These GAF scores are all from the office treatment records from HopeHealth, where Plaintiff was seen on several occasions from June through September 2013. See (R.pp. 431-449). The ALJ specifically references his consideration of this evidence in his decision, including two of



the same page numbers cited by Plaintiff in her brief, which reflect that Plaintiff was assigned a GAF score of 47 during office visits on January 12, 2013 and January 31, 2013. See (R.pp. 15, 21); see also (R.pp. 432, 438). The ALJ notes in his decision that the HopeHealth physician diagnosed Plaintiff with severe recurrent major depression on those dates, but also notes that Plaintiff's corresponding mental status examinations on those dates were essentially normal. (R.pp. 15, 21). A review of the medical notes from those visits confirms that the attending physician found on both of these visits that, while Plaintiff's affect was noted to be constricted and her mood had some dysphoria, her appearance was appropriate; she was oriented to person, place, time and situation; her behavior was described as unremarkable, her psychomotor behaviors were described as unremarkable, her speech was appropriate; her memory was intact; her intellect was superior and her attitude was cooperative; her attention was gained and maintained; her reasoning and impulse control were both good; her judgement and insight were both good; her thought processes were logical; and she did not express either suicidal or homicidal ideation. (R.pp. 432, 438).

As such, it is clear that the ALJ considered this evidence. The ALJ also separately specifically stated that he had carefully considered "all the evidence" in reaching his decision. (R.p. 12). See Wall v. Astrue, 561 F.3d 1048, 1070 (10th Cir. 2009)[Noting well established principle of taking ALJ at his word when he indicates he considered all of the evidence]. Hence, the ALJ's failure to specifically reference Plaintiff's GAF scores from those records in his decision does not mean that some reversible error has been committed, or that a remand of this case is required. Cf. McDaniel v. Astrue, No. 09-109, 2010 WL 3211050, at * 6 (W.D.N.C. July 22, 2010) ["ALJ is not tasked with the impossible burden of mentioning every piece of evidence that may be placed into the Administrative Record"] (quoting Parks v. Sullivan, 766 F.Supp. 627, 635 (N.D.Ill. 1991), adopted

11



by 2010 WL 3211048 (W.D.N.C. Aug. 12, 2010); Dryer, 395 F.3d at 1211 [ALJ not required to specifically refer to every piece of evidence in the decision]. Additionally, it is worth noting that some courts have found that GAF scores are no longer even an appropriate measurement tool for mental impairments. Finley v. Colvin, No. 12-7908, 2013 WL 6384355 at * 23, n. 9 (S.D.W.V. Dec. 5, 2013) ["It should be noted that in the latest addition of the [DSM],[5] the GAF scale was abandoned as a measurement tool"]; see also Lewis v. Colvin, No. 12-8073, 2013 WL 6145811, at * 7, n. 1 (S.D.W.V. Nov. 21, 2013) [Affirming ALJ decision and noting that the GAF scale has been abandoned in the DSM-V].

This claim is therefore without merit.

### III.

### (Fibromyalgia Evaluation)

Plaintiff's final claim of error is that the ALJ erred in his evaluation of her fibromyalgia because he concluded that Plaintiff has never suffered from the required eleven positive trigger points upon palpation (out of eighteen) required for a diagnosis of fibromyalgia (R.p. 17), when "trigger points" are not the exclusive means for obtaining a diagnosis of fibromyalgia, citing to SSR 12-2p. This argument is without merit for the simple fact that, although the ALJ did note in his decision that Plaintiff had never met the requirement of having 11 of 18 tender point cites on palpation as set forth in criteria established by the American College of Rheumatology, he nonetheless found that Plaintiff not only *did* have fibromyalgia, but that this was one of Plaintiff's "severe" impairments. (R.p. 14).

---

[5]Diagnostic and Statistical Manual of Mental Disorders.



However, even though fibromyalgia can be a disabling impairment in some circumstances, a claimant is not entitled to disability just because they suffer from fibromyalgia. Cf. Parven-McGladdery v. Commissioner, No. 02-1052, 2002 WL 31780954 (6th Cir. December 11, 2002) ["[A]lthough some people suffering from fibromyalgia may be totally disabled, most people inflicted with that disease are not disabled"], citing Sarchet v. Chater, 78 F.3d 305, 307 (7th Cir. 1996); Vance v. Comm'r of Social Security, 260 Fed. Appx. 801, 806 (6th Cir. 2008) ["[A] diagnosis of fibromyalgia does not automatically entitle [a claimant] to disability benefits . . . ."]; Hoyd v. Astrue, No. 10-1625, 2012 WL 681577 at * 10 (S.D.Ind. Feb. 29, 2012)["[O]f course, a fibromyalgia diagnosis does not automatically entitled an applicant to benefits. In fact, most people who have fibromyalgia are not disabled from working."]. Decisions of non-disability in fibromyalgia cases are routinely upheld where objective findings do not support a conclusion that a claimant's fibromyalgia renders them disabled. Such objective findings can include no evidence of muscle wasting or atrophy, 5/5 (full) strength, and other such objective indications of non-disability. Such is the case here.

In his decision, the ALJ specifically noted that, notwithstanding Plaintiff's fibromyalgia diagnosis, physical examinations have not shown significant strength deficits, atrophy with associated muscle weakness, motor loss, or any other such findings to support a conclusion that this condition was of a disabling severity. See generally, (R.pp. 19-21); see also (R.p. 320-321, 339, 354, 358-366, 399, 401, 403, 405, 407-408, 412). Cf. Cruse v. Bowen, 867 F.2d 1183, 1186 (8th Cir. 1989) ["The mere fact that working may cause pain or discomfort does not mandate a finding of disability]; Campbell v. Colvin, No. 12-1869, 2014 WL 801317 at * 10 (D.S.C. Feb. 26, 2014); Gaskin v. Commissioner of Social Security, 280 Fed.Appx. 472, 477 (6th Cir. 2008) [Finding that



13

evidence of no muscle atrophy and that claimant "possesses normal strength" contradicted Plaintiff's claims of disabling physical impairment]; <u>Reese v. Comm'r of Social Security</u>, No. 09-840, 2010 WL 3603613 at * 5 (S.D.Ohio Sept. 10, 2010)[Physician's opinion that fibromyalgia is usually not disabling was consistent with line of cases that indicate "most cases of fibromyalgia do not disable the individual from working."]; <u>see</u> <u>also</u> <u>Craig v. Chater</u>, 76 F.3d 589-590 (4th Cir. 1996) ["There is nothing objective about a doctor saying, without more, 'I observed my patient telling me she was in pain'"].

       Hence, Plaintiff's argument that the ALJ committed reversible error by failing to find that she suffers from fibromyalgia (if that is her argument) is without merit for the simple fact that the ALJ *did* find that she suffers from fibromyalgia.  Even so, as noted hereinabove, the fact that she has fibromyalgia does not mean that she is entitled to disability benefits where the evidence does not otherwise support such a finding.  <u>Vance</u>, 260 Fed. Appx. at 806 ["[A] diagnosis of fibromyalgia does not automatically entitle [a claimant] to disability benefits . . . ."].  Here, the ALJ set forth and cited to substantial evidence in the case record to justify his finding that Plaintiff's fibromyalgia was not of a disabling severity.  <u>Thomas v. Celebrezze</u>, 331 F.2d 541, 543 (4th Cir. 1964) [court scrutinizes the record as a whole to determine whether the conclusions reached are rational].  Therefore, this argument is without merit.

### Conclusion

       Substantial evidence is defined as "... evidence which a reasoning mind would accept as sufficient to support a particular conclusion." <u>Shively v. Heckler</u>, 739 F.2d 987, 989 (4th Cir.1984).  As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury),



this Court is required to uphold the decision, even should the Court disagree with the decision. <u>Blalock</u>, 483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period. Therefore, it is recommended that the decision of the Commissioner be affirmed.

The parties are referred to the notice page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

June 13, 2016
Charleston, South Carolina

15



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" <u>Diamond v. Colonial Life & Acc. Ins. Co.</u>, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); <u>see</u> Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk<br>
United States District Court<br>
Post Office Box 835<br>
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

